Our first case of the morning is case number 116362, Morton Goldfine et al. v. Barak Ferrazzo and Ferrazzo, Kirschbaum and Perlman. Are the parties ready to proceed? Yes, Your Honor. You may proceed. Good morning, Your Honors. May it please the Court, my name is Tim Eaton and I represent the law firm of Barak Ferrazzo, the appellants. The actual damages in this legal malpractice case that was found by the trial court is $1.3 million. The plaintiff wants, on top of that, another $18 to $21 million in statutory interest and attorney's fees, which he said is owed to him under the Illinois securities law. He is seeking this additional $18 to $21 million in statutory damages by whipping out of the Illinois securities law only those damage provisions that favor him and ignoring the fact that those damages are specifically linked to a right in that law by the securities violator to stop interest and attorney's fees from accruing by rescinding the investment transaction and returning the money. These Illinois securities law award extraordinary damages include a guaranteed return twice that of the general interest rate in Illinois and attorney's fees to encourage security offenders to rescind swiftly. But a lawyer defendant in a legal malpractice case has no right to rescind under the securities law in question. Plaintiff would have the damages continue to mount against the lawyer before it's even determined whether or not there are actual damages due to the legal malpractice. In short, these compensatory interest damages and attorney's fees cannot be transferred to a legal malpractice setting because their statutory purpose is more than just to compensate. They are intended both to deter and affect conduct and thus are more akin to the treble compensatory damages in Harris v. Manor health care decided by this court, which this court found those compensatory damages to be punitive in nature. However, one may categorize or describe these augmented damages when they're used to encourage rescission by securities offenders, it's punitive to award them against a third party that cannot rescind and stop their accrual. Moreover, by applying a statute out of context, plaintiffs would violate this court's precedent in Eastman v. Mesner, which limits damages in a malpractice case to only those damages that the plaintiff would have been entitled to had the malpractice not occurred. But because under the ISL, the securities violator could have rescinded the transaction to stop the statutory interest and attorney's fees from running, and here the lawyer cannot, plaintiff is not entitled to these damages. To apply it would be fundamentally unfair and cannot be what the General Assembly intended in looking at the online securities law. Mr. Eaton, how do you address the plaintiff's argument that the provision not being prejudgment nor postjudgment interest and as such, not based, but it is based not on the amount of the judgment, but on the amount of the investment and therefore is compensatory? Your Honor, several things. First of all, I believe it's compensatory as it relates to the person who violated the Securities Act, in this case, Shearson. Because it rescinds the transaction, allows the person to get 10% interest or what's provided in the document and attorney's fees. But when you try to transfer that to a legal malpractice defendant, it simply does not work. Because the legal malpractice defendant did not violate the Act. In fact, there's 10 pages of definitions in the online securities law saying who it applies to, what circumstances it is applied, and when it gets to damages, it links it. It pairs it with the right to rescind the transaction and the attorney's fees stop and the interest stops. And because this Court has often held in construing the statute where it is in derogation of the common law, which in this case it is because it provides for statutory interest and provides for a shifting of attorney's fees, the Court must give the statute its plain and ordinary meaning. And in this case, to give this statute its plain and ordinary meaning would mean that it would not apply to these defendants. But, Mr. Eaton, doesn't the statute make sure that the plaintiffs are whole, which is the purpose of the ISL statute? It does, Your Honor, as to a securities violator. And, in fact, that's what the Secretary of State's amicus brief argued. That is, to a person who violates the securities law, they want to make the investor whole. But here we have a legal malpractice context. And it's often the case when a plaintiff brings a lawsuit against someone else that they're not entitled to interest on the money they invested unless there's a statute that's involved. And they're not entitled to attorney's fees because of the American rule. So often this Court has held a plaintiff is made whole, even when interest and attorney's fees are not involved. So in order to justify the application of that statute, you have to find that an attorney both would be someone that the legislature had intended or, more importantly, that the attorney would have the right, as a security violator has, to rescind the contract. In this case, a plaintiff would argue that the securities violator, the person who committed the fraud, has more of a right or entitlement because they can rescind where a lawyer cannot. As a matter of fact, in the appellate court in Delaney v. Heffel, which we cite in our brief, the appellate court said that despite the remedial purpose of the Illinois securities law, they would not extend the scope of the purchaser to an assignee of the transaction because looking at the plain and ordinary text of the statute, it simply would not apply. And in this case, just by way of background, the plaintiff made initial investments of $4.5 million over a period of time, 1988 to 1990. The investment soured in 1991, in May. Saw my client in May of 91. There was a discussion about a tolling agreement. There was a discussion about contingency fee. And the long and the short of it is we did not continue to represent him beyond just trying to get a tolling agreement with Shearson, which we did. There was a decision made by my client not to send a notice pursuant to the ISL because as the record indicates below, he was concerned about an election of remedies and there were other accounts that could go forward against Shearson. So he made a mistake. We're not here to contest that. But the question is when you compare his mistake to the allegations of fraud that were proven in the underlying case within the legal malpractice case against Shearson, why should my client be given less rights? Why should we apply a statute that does not apply to lawyers by the face of the statute? But we would say the securities violator has the right to stop this exorbitant amount of interest. This interest is twice the general interest statute, which is 5% in Illinois. It's 10% in this case. And in the legal malpractice case, as this Court is well aware, these take time. Because until there's actual damages, there's no right legal malpractice claim. This case took 22 years to get here. The Trijic case, which this Court ruled upon, took 25 years. So meanwhile, if you apply this ISL provision to a lawyer, the interest is going to far surpass in time the actual damages and the lawyer cannot do anything about it if you apply that ISL. Is there any amount of interest that should be applied against the lawyer in the malpractice case? Your Honor. Are you saying that provision shouldn't apply in legal malpractice at all? Certainly there would be no provision under the ISL. The question would be whether there would be any interest that could be given to them based upon some other statute or some other provision. There might be something in the documents that would apply. So if there was, there isn't in this case. Interest could be awarded. As you all know, there can be prejudgmental interest in certain equitable matters. Neither of those circumstances apply here. But interest in some cases could apply. What about the concept that, you know, the party needs to be made whole? Again, Your Honor, I understand that concept generally. And this Court has repeatedly affirmed verdicts where plaintiffs have not been entitled to attorney's fees because they haven't shifted. And yet the Court still found they were made whole. This Court has approved and affirmed verdicts where there's not been interest awarded because there was no statute or contract provided, yet the Court found the plaintiff was still made whole. So that is a somewhat nuanced concept. And in this case, I would argue it does not apply, particularly here where it's punitive. And that gets me to this Court's decision in Trigee. And in Trigee, there's two points I'm going to make with respect to that case. First of all, this Court held that the plaintiff was not entitled to post-judgment interest under 213.02 because the very face of the statute said it only applied to judgments, not hypothetical judgments. And plaintiffs were arguing in that case the judgment would have been entered on X date, therefore, until the legal malpractice cases decided I get interest running from that. And this Court wisely held the statute doesn't apply. Admittedly, if there had not been malpractice, he probably would have gotten that interest. But because we're in a common law legal malpractice setting and because we're talking about statutory damages, this Court held that the statute by its terms has to apply, and it did not. And this Court also said that punitive damages against the legal malpractice defendant could not be applied. Now, we're not we are arguing here that to apply this interest and to apply these attorneys' fees on an ongoing basis is punitive or aggravated, not common law punitive damages, as was the case in Trigee. But we are saying that if you apply this statute out of context as to the lawyer, it becomes punitive or aggravated damages, which is what is contained in 21115 and barred by the legislature. So for that reason also, we believe that it should not apply. The ISBA and the CBA have filed an amicus brief which opposes the plaintiff's distorted interpretation of this statute because they are concerned, as this Court was in Trigee, that if you allow this unlimited amount of damages to continue to mount, that the impact it may have on premiums for lawyers and on lawyers who would be willing to take these types of cases would have a grave effect. This is exactly the reasoning that this Court pointed out in its opinion in Trigee. They expressed the same concern. So the ISBA and CBA just didn't make this up out of thin air, as the plaintiffs seem to suggest in their brief. This was a concern that this Court had in not applying punitive damages in the context of a legal malpractice case. This is why we also believe the Secretary of State's office, who filed an amicus in favor of the plaintiff, was concerned. Because if you were to interpret this as common law punitive damages, then their concern is it would not be mandatory, it could be discretionary. We are not making that argument. We are simply saying that to apply it in this context is aggravated or punitive damages. This Court held in the Manor Health Care case, the Harris v. Manor Health Care case, that in the context of treble compensatory damages, even though they're designated as compensatory, it can be punitive in effect when you apply that to a situation where they're, in that case, also a common law punitive damage count. So damages, by their nature, can be both punitive and compensatory, even in a remedial statute. So it becomes up to this Court to decide what's fair in applying those damages. And it is unfair to lawyers to apply a securities law that does not apply to them and where they cannot take advantage of the very statutory framework of that law, which would allow them to rescind. So we believe that a lawyer should not be required to sit helplessly by for 22 years. This case was filed in 1993 against Shearson, 1994 against the law firm, and let those damages mount. Plaintiffs argue, well, you could have intervened in the underlying case against Shearson. We tried. They opposed it. We did not. We were not allowed to intervene. Is it your position, Mr. Eaton, that if this Court decides that the plaintiffs are entitled to statutory interest, that it should be equal to what plaintiffs would have obtained from Shearson back in 91? Is that your position on that? Our position, if this Court decides that the Illinois securities law applies, Justice Thomas, is, first of all, that the plaintiffs did not meet their burden in showing exactly when the harm occurred. Because under this Court's decision in Eastman, it says the plaintiff has the burden to prove actual damages. So the plaintiff would have to show when they could have obtained a judgment under the ISL or settlement under the ISL, and then that would be the date in which interest would run to. The plaintiff failed to do that. In fact, their experts said that the ISL claim would have been decided quicker than the non-ISL counts that were decided in 2007. But he didn't say when. In Trigee, at least the plaintiff came up with a date for this Court to determine whether or not post-judgment interest should run from a particular date. The plaintiff failed to do that. So, first of all, they're not entitled to any damage with their failure of proof. Secondly, Your Honor, if they do – if you do decide that the ISL applies and you do decide that you're going to pick a date, which would be 2007, the date of the settlement, we would submit that the interest only runs on the amount of actual damages due to the And the reason we say that is they obtained $3.2 million in 2007 from that original 4.5 investment as a result of being able to pursue their non-ISL counts. That's why Judge Burke later in 2011 entered a judgment for actual damages due to the legal malpractice of 1.3. That is the only amount that interest should run on, and it should only run on the 1.3 through 2007. It should not extend beyond that point to the legal malpractice. If you apply the ISL, it's only when they would have received their full recovery, and that would have been 2007. So interest should only run up until that point. Plaintiffs argue that the interest should run on the entire amount, and that that amount should continue even through today, despite the fact that they've had $3.2 million in their possession since 2007. That is an absurd reading of the statute. Justice Joe Gordon filed a special concurrence arguing that that would be unfair in the first Kugler case that dealt with an application of the ISL, not a legal malpractice case. And Justice Robert Gordon in this case dissented and said that would be unfair because they've had possession of the money, and that was the feeling of the trial judge as well. And Justice Gordon's notion was that of equity as opposed to the language of the statute? He cited several statutory construction principles, Your Honor, where it says that you shouldn't interpret a statute that has an absurd result. And then he said in this case it would be an absurd result because it would be a windfall to the plaintiffs to have the possession of $3.2 million since 2007, and then yet continue to get interest on it as if they didn't receive it. So he did not read the statute literally like the majority opinion did. He said you have to read some common sense into it, and you should not have an absurd application. If there's no further questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. Good morning. Good morning. May it please the Court, my name is Ed Joyce, and together with Martin Oberman, Steve Since Barrick Farazana was not challenging the trial court's finding that they committed malpractice in not preserving the Goldfines' Illinois securities law claim, and since they didn't challenge the trial court's finding that the Goldfines proved their case within the case in the appellate court, I'm going to keep my comments for the underlying facts to a minimum. In 1991, the Goldfines lost nearly $5 million because of investments they made in a stock we call FCH, and allegedly they lost that money because of the fraud of Sherson and others. The Goldfines hired Barrick Farazana in 1991 and asked them specifically to try and settle their claims against Sherson, and if you can't do that, preserve my claims until I can hire a contingent fee lawyer to pursue those claims. Barrick Farazana failed in that regard by intentionally, for some inexplicable reason, giving up the ISL claim, which has been proven to be the best and only remedy available to the Goldfines, so they could be made whole. The claim under the Illinois securities law gives the Goldfines rescission of the money they invested in this security. It gives them compensatory interest to reimburse them for the money they didn't otherwise earn on their investment from the date they purchased the security until they are paid the rescissionary damages. It gives them reasonable attorney's fees so that they have to sue the wrongdoer they're not out of pocket, and it gives them the cost they incur in pursuing that claim. According to the Secretary of State and according to others, that statute is remedial in nature. The intent was to make the defrauded victim whole, so when that statute was taken away from the Goldfines, they were in a very difficult position. Barrick Farazana, before the trial court, the appellate court, and here, passed themselves on the back because they preserved for the Goldfines a common law fraud claim, a consumer fraud claim, and an accounting malpractice claim. First of all, these claims have nothing to do with the ISL. They're totally different. And maybe more importantly, they're extremely difficult and expensive claims to pursue. Only somebody who is prepared to advance, as Mr. Goldfine did, over a million dollars in costs for experts could possibly pursue those claims. So, at the outset, these are not the type of claims that an injured client of a negligent lawyer would have to pursue in order to mitigate his damages. Help me with this, Mr. Joyce. You want from the defendants about 20-plus years of interest, right? Correct. Okay. Is that what the plaintiffs would have recovered from Sherrison had the defendant properly filed for rescission? Absolutely. They would have received 20-plus years of interest? They would have received interest from the day Sherrison paid the rescission remedy awarded by the court. So, if the court awarded the rescission damage in 2007 or 2008, and if Sherrison elected to pay it then, they would pay $4.5 million. They would pay interest from the date that stock was purchased until date of payment. Now, in point of fact, what seems to always happen here is the wealthy defendant takes an appeal. It's appearing they can make more money than the 10%. So, they take an appeal. So, the notion of when we would have collected the interest from Sherrison is really sort of illusory. In this case... Let me just stop you there. How do you address what I believe Mr. Eaton to be saying, that plaintiffs' ongoing lawsuit against Sherrison left defendants unable to prevent the ongoing accumulation of interest? I think that argument is ridiculous. Nothing in the world would have stopped the Barrett-Ferrazano firm from approaching the gold fine saying, let's settle this. Unlike a lot of claims, under the ISL, I can compute the rescission you're entitled to. I can compute the 10% you're entitled to. If we can't agree on the legal fees, let's ask the judge who has the case to have a hearing on legal fees. Then the matter is over. They also could have walked in and said, look, we'll take over these great cases that we preserve for you. We'll pay you to get out of our malpractice claim, and we'll take over the really great consumer fraud case, and the case against the accountants, and the time of the law fraud case. They didn't do that. Mr. Joyce, is there any legal support for the defendant's position that attorney's fees and costs are not available because this is a legal malpractice case? Not unless you decide it that way. There's no case anywhere that says a lawyer gets a special deal because he's a lawyer. That's all they're asking for here. This firm committed malpractice and then developed a flawed theory of defense. Their theory of defense was, let's let Mark Goldfein spend a lot of money on a difficult case, and we hope he loses, and we hope in losing the case, the jury concludes his reliance wasn't reasonable. If that would have happened, then there's no ISL claim because that's one of the elements that is in common with these difficult cases. That's the only element in common. So their strategy here was to sit back and watch Mark spend a great deal of money on these cases and hope he lost because there was no reasonable reliance. When that didn't happen, it blew up in their face. Then they had a scramble to put together a defense and put together a trial. They didn't prevail before Judge Burke on those issues. Now, Mr. Eaton said that Beric Ferrazzano sought to intervene in these cases. He misspoke. There is no place in the record where Beric Ferrazzano ever sought to intervene in anything with one exception. There were settlement negotiations going on between the Goldfeins and Shearson. Beric Ferrazzano wanted to intervene so they could listen to the settlement negotiations. They specifically said, we don't want to pay one penny. We just want to listen. And that brought to Judge Burke's attention. He said, well, you can't intervene to listen. If you want to participate, participate. And we said in our opening brief that we asked them on numerous occasions to participate in a global settlement and they always refused because they had this failed theory that Goldfein would lose that extremely difficult December fraud case and they'd be bailed out. It was a high-risk theory. Now, these people are not amateurs. They're not little old ladies. They are professional securities lawyers. They knew exactly what they were doing. They knew when they gave up the ISL claim and if they were sued for malpractice, they knew the consequences. They knew they'd be liable for rescission, for interest, for attorney's fees and costs. And knowing that, they're the ones who caused the delay. Within a couple of years of both cases being filed, the case against Shearson and the case against Beric Ferrazzano, they asked and insisted that we agree to enter an order to put the malpractice case on an indefinite stay. And that case not proceed until we finished our litigation against Shearson. Well, they knew what they were doing. They knew the risk they were taking. And now they come in here and they say, oh my God, this is so totally unfair because we have this big delay. It's a delay they requested as part of their failed strategy. Mr. Joyce, may I ask you this? Your argument is, of course, that under our legal malpractice law, that your client is to be made whole. Correct. Why would, if that's true, why would the, why wasn't your client made whole at the time of the settlement in 2007 so that interest would end then? And the second piece of that, of course, is why, if interest is to continue running or run up to 2007, why isn't that only interest against the set-off, what was left over, the $1.3 million? I have two answers. Okay. And thank you for asking that question. Beric Ferrazzano doesn't want to pay any interest at all on that $3.2 million. They don't want to pay a penny from day one when we made the investment until 2007. None. Because they say that that award was not an award that related to legal malpractice. Yet they want an offset of that award against what they owe us for causing us to lose the remedy under the ISL. Now, the reason we're entitled to interest on $3.2 million is the gold fines did not have the use of that money for 22 years. And the statute requires for them to be made whole if they get the use of that money. Now, the question you ask really is a question that bothered both of the Justices Gordon. And the response I'll give you is the response that the Kugler Court first gave. Even though we may not like the remedy, even though if we were sitting there in the legislature, we would craft a better remedy. The ISL is not ambiguous. And therefore, the remedy it imposes is a remedy that the parties are stuck with. This Court, I respectfully submit, unless you conclude that statute is ambiguous, is not in a position to change what the legislature said. And, you know, here, are the gold fines going to receive interest on $3.2 million that they have for a while under the statute? Yes. Is that something legislature knew? Yes. Is that unfair, unreasonable? I don't think that's a test under statutory construction. Why wouldn't it end then in 2007? Because the statute says differently. What the statute says is when you compute the ISL remedy, you determine the amount of purchase of rescinded stock, and you make the calculation of the 10% from the date of purchase until the date of rescission is paid, then you add the legal fees, and you add the costs, and then you deduct at that point in time money received on the securities. Not a very artful word, but we've always concluded that meant money you got because you sold your stock, money you got because there's a dividend. And in this case, we're looking at the $3.2 million as an offset. But why would they get a $3.2 million offset? The gold fines filed that case to mitigate their damages. The law is pretty clear in Illinois that an injured client of a negligent lawyer who spends money to mitigate the damages is entitled to get that money back. Here, you can either add the $1.6 million they spent to the damages, or you can reduce the $3.2 to $1.6. I would suggest reducing the $3.2 to $1.6 is a better remedy because it fits the language of the statute. The statute says you reduce what they got, but what they got was $1.6. So I hope I answered your question. There's also a suggestion in Barrett-Ferrazano's brief that the cases the gold fines were left with were so great that they would get punitive damages. And if they got punitive damages, it's possible they would have received a better remedy than the remedy under the ISL. And at that point, no damages, no malpractice. Their own lawyer, who was called at trial, Terry Rose Saunders, a very experienced litigator of securities cases, said two things. One, the settlement result was excellent. And two, you don't get punitive damages in these cases. She's been trying these cases for 40 years. She's always asked for it. She's never gotten it. Then she talked about the cases that were reported in the appellate court in Illinois, where someone did get punitive, only to lose it in the appellate court. It's a remedy that is seldom ever sustained in the appellate court or given by the trial court. Okay. Now, Eric Barzano talks about the prejudice that is going to befall a lawyer because he's a lawyer. And they argue that the Illinois securities law does not give a remedy against a lawyer. Their argument is a total red herring. The Goldfinns have never sued Eric Barzano for violating the Illinois securities law. They sued Eric Barzano for legal malpractice because of their negligence. And in the case within the case against Shearson, they proved up the violation of the ISL. So this whole argument about a lawyer cannot be responsible for causing his client to lose a statutory remedy unless the statute says a lawyer is liable is unbelievable. I'm surprised they could sit there and make that argument. There's not a statute anywhere I've ever seen anywhere. We looked far and wide. It says, oh, by the way, if your lawyer makes a mistake and you lose the benefit of this statute, your lawyer can be sued for malpractice. It's unbelievable they take that position. I want to get to a couple of the arguments that they made. For example, let's start with the Goldfinns' actual loss was $1.3 million. Now, the phrase actual loss sounds great. Try and find a statute that defines it. Try and find a case that defines it. Try and find some area in this case where it was defined. Actual loss is a word they made up to support their notion that the actual loss is $1.3 million. Since the Goldfinns lost the benefit of an ISL remedy, their actual loss in a legal malpractice case is the value of the remedy they lost, period. And that remedy, it was calculated properly by the Illinois Appellate Court. We submit with the exception of the offset. The offset should have been reduced. There's just no basis for the notion that the loss was $1.3 million. Well, we already talked about the fact the ISL does not authorize imposing rescission on lawyers. That's a non-starter. ISL interest and attorney's fees are punitive. All right. Well, the Illinois Secretary of State, Department of Securities, or the Securities Division, wrote a wonderful amicus pointing out why the remedy under the ISL is not punitive but instead is compensatory. They've cited other treatises, other national surveys that have the same result. There were cases cited by Barrick Farazano, including a case from this court, where the court said, words to the effect, some aspect of the ISL was punitive. In all of those cases, it was never a finding of the court. In all those cases, that statement had nothing to do with the outcome of the case. It was just a word used for whatever reason. As far as stopping the damage, as we've already pointed out, they could have participated in a settlement. They could have tendered money. The notion that we've caused them to sit there for 22 years is ridiculous. They're the ones who wanted to wait until Churston was resolved. They imposed that on us. They obtained an order to that effect, and they have to suffer the consequence of it. Mr. Joyce, could you back up? When you say they imposed that on you, that an order was entered, was there an objection by you, or was that an agreed-upon order? It was an agreed order ultimately, but here's how it came about. The gold fines made a motion to transfer the legal malpractice case from the law division to the commercial calendar. In order for Barrett-Ferrazano to not object to that, they insisted that we agree to not pursue Barrett-Ferrazano for legal malpractice until the Churston case was totally resolved, and we agreed. Now, maybe imposed was a license I took, but that wasn't something we looked for. It was something we consented to. But in any event, they can't now say the order they wanted and they got justifies prejudice to them. Mr. Joyce, may I ask you this? What you just described to us, is that in the record? Absolutely. A copy of the order is in the appendix. It's dealt with specifically. Not the order, but the negotiations. That's also discussed in our brief. Is it in the record? I can't answer that. I'm sorry. I can't answer that. Well, maybe the follow-up question, Mr. Joyce, is does the order reflect that it's by agreement? Oh, absolutely. Without a doubt. It's in the agreed order. Thank you. Okay. I think I'm through. Pardon me. I'm not through. Okay. The order which is attached to the appendix at C-100 reflects that it was part of a negotiation and that it was by agreement ultimately. Thank you. Unless you have questions for me, I'm going to sit down. Thank you, Mr. Joyce. Thank you very much. Your Honors, I want to address both some of your questions and some of the comments that Mr. Joyce made. But starting where we just left off, in 1996, we sought a stay. That legal malpractice action was not right. This Court just addressed that issue in the Evanson insurance case just this last year. You must have access to a stay. Until the lawsuit went forward with Shearson, there was no determination whether or not our malpractice caused any damages. In fact, their expert testified in that trial that they were seeking $16 to $18 million based upon the non-ISL counts. If they had recovered $16 to $18 million, we wouldn't be here today because there would have been no recovery from the lawyers. They can't have a double recovery. So we were entitled to wait and see what happened. That case took a long time. It was finally resolved in 2007. Justice Burke, you asked the question, has there ever been a case that have dealt with attorney's fees and costs in a malpractice setting where they have been deprived of that right to get it? Yes. Trigy. The court said in that case that they were seeking statutory damages. They were seeking interests from a hypothetical post-judgment. And this Court said, although normally they might have been made whole by that, you can't apply a statute out of context. And that statute did not apply to have hypothetical damages just like the ISL does not apply in legal malpractice cases. Justice Tice, you were concerned and were asking questions about what about the settlement in 2007. Well, the difficulty we're having in determining when the interest stops is that the ISL doesn't address anything that relates to lawyers. It just says when Shearson pays, it stops. Well, what happens in the circumstances where Shearson pays something and then the malpractice case goes on? Well, it doesn't say. It doesn't say because it doesn't apply. It never was intended to apply. That's why there's that gap in that statute with respect to what do you do in a legal malpractice case. Justice Thomas, you were asking about the right to rescind. If you look at 13A, which is the provision that provides for these damages, it is linked to the right to rescind. A lawyer here cannot rescind. Mr. Joyce says, well, they could have settled. When? Until we knew what the actual damages were, which was 2007. At that point, there was a determination. And actual damages isn't a term that we made up. That's what Justice Burke said was going on in 2011 when he entered that order. The actual damages were 1.3. And then he applied interest on only the 1.3. Now, in this case, Tri-G says that where you have statutory damages in a legal malpractice case, the statute, by its very terms, must apply. And in this case, it doesn't make sense to apply. And if you apply it, even if this Court would decide to apply it, it must be done in the context of the public policy behind 211.15, which bars punitive or aggravated damages. The public policy behind ISL is to punish security violators. Shearson was charged with three counts of fraud. We mistakenly didn't file a notice. So they want to take the damages that would have been against Shearson and apply them to a lawyer who failed to file a notice. That does not make sense. The public policy behind 211.15 is not to impose aggravated or punitive damages, punitive in nature. We have never said that these are common law punitive damages. The Secretary of State's brief, if you read it carefully, which I know this Court will, it doesn't say one word about lawyers. It says that they didn't want, as it relates to security violators, for this Court to hold its punitive, because then it might become discretionary. They held its compensatory as to security violators, not as to lawyers. Because lawyers don't have the right under that statute to stop the interest in the attorney's fees from running, which is a huge shift. The American rule says that we all pay our own attorney's fees, which goes to the cross appeal. Mr. Grofheim wants attorney's fees for pursuing the lawsuit against Shearson, which determined what his actual damages were in the legal malpractice case. He doesn't get them. The American rule applies. As to the ISL damage provision, yes, attorney's fees apply. If you violate that ISL Act, and if you don't rescind, because under that statute, if I'm Shearson and I want to stop everything, and I say, okay, I'll give you your money back, then if the plaintiff refuses and goes on with their lawsuit, the interest stops at that point. Within 15 days of giving the election, the attorney's fees stop. We did not have the right to stop it. And that's why under this Court's logic, in TRIG or a majority of this Court, actually a unanimous Court held as to the application of statutory interest that should not apply, a majority of this Court held that punitive damages shouldn't apply. And does this not make the legal malpractice plaintiff whole? This Court found an exception in two different instances, and we're asking them to do the same thing in this case. So respectfully, we ask this Court to affirm the $1.3 million in actual legal malpractice damages. He's already received 3.2, and then he will have returned to him the full amount of his investment when he invested in these speculative stocks. Thank you. Thank you. Case number 116362, Goldfine v. Barack Frazzo et al. Will be taken under advisement as agenda number 8. Mr. Eaton and Mr. Joyce, we thank you for your arguments today, and you are excused at this time.